Good morning, Your Honors. May it please the Court, my name is Jason Kim of the law firm Schneider-Wallace-Cotrell-Konecki. I'm representing the City of Reno, Nevada, who is the plaintiff in the District Court and is the appellant here. Reno brought a lawsuit on behalf of a putative class of Nevada cities and counties seeking to enforce a specific provision of a 2007 Nevada law that the parties in the Court have referred to as Nevada's video service law. Counsel, what is your best statutory authority that your client has a private right of action or a right of action in this circumstance? So I would say that our strongest plank of the right of action argument is actually based on the Federal Declaratory Judgment Act. I believe that that is a stronger basis to maintain this suit than the implied right of action. And I think it's implicit in our briefing that we do not claim that there is an expressed right of action for City of Reno. Okay, so here is a question for you. The claim itself is purely a state law claim, am I right about that? That is correct. Okay. And if state law, you may not agree with the premise of this question, but if state law forbids a party from suing for a particular claim, can there be a Federal Declaratory Judgment action brought on the same claim in Federal Court? Yes, Your Honor. We believe that that is true with a certain amount of nuance to it. So I think one issue here is where the rights that we're seeking a declaration of, whether it's a state or Federal Declaratory Judgment action, is based on state law, you know, does the Nevada or the Federal standard apply? Because we're in Federal Court, you know, Erie Doctrine and all, let's assume for the time being that the Federal law applies. Now if you look, though... But is this procedural or is that a substantive question as to who can sue? I would consider that to be a procedural question. Really? Why is that procedural? I mean, if a state, as a policy matter, says, you know, A, B, and C can sue, but nobody else can, and D comes along and says, oh, I can, why isn't that a substantive interference with what the state has provided? I understand that that's a fair point. But even under the Nevada, and the point I wanted to get to, though, is I don't know that the Nevada Declaratory Judgment standard, for our purposes, is any different. But to get at the core of the issue... Well, no, the Declaratory Judgment law may not be, but it appears to me that the way the law is set up, that a local government is entitled to file a complaint with the State Attorney General's Office, the Bureau of Consumer Protection, and that that entity can sue. But it seems to me that it's precluded the local government from doing so directly. Sure. And I'd like to distinguish, though, two issues, to be precise. One is, you know, does the Nevada Video Service law expressly grant a right of action to a city? And as I admit, that's not the case. But the fact that it does not expressly grant a right of action to the city doesn't necessarily mean that it expressly precludes... No, it implicitly precludes it, though, by giving you a pathway that you didn't follow. Okay. So I might have missed that. But that actually leads right into the discussion, then, about, well, first, going back to the declaratory relief point. So we've cited the Baldonado case, and all the parties have, both on the three-part test, which is largely similar to the federal test, about implied private rights of action, but more importantly... I'm sorry. I'm sorry. Before you go to that, let's just assume for a moment that the statute itself under state law does not give a right of action. I'd like to just understand if you have any case that's in response to Judge Graber's earlier question, as I understood it anyway, about the Federal Declaratory Judgment Act. Do you have any case that says that the Federal Declaratory Judgment Act can supply a cause of action if there isn't one already? Yes. What we cited in our brief, and this is a federal-federal, it's not federal-state, so I understand that there might be a distinction there. You cited Digg-Rigorio, but I did not find it helpful at all. So do you have anything other than Digg-Rigorio? No, that was the case that we cited. But with respect to the issue under state law, the point I wanted to get was on the Baldonado case. There are three parts of that holding. The first part we've all discussed, which is a three-part test for finding an implied private right of action. Just as significant, if not more so, to this case is the second part of the Baldonado holding, the Nevada Supreme Court case, where rather than resolving all the claims on the basis of not finding an implied right of action, the Nevada Supreme Court then did a separate analysis as to whether the declaratory judgment claim was still viable. And it could have decided that because we find no implied private action, there is therefore no declaratory judgment claim under Nevada law. But what the court did instead of doing that was the court did this additional analysis and said, well, declaratory judgment, the issue there is, it's a very closely related issue, is does the statutory scheme limit the remedies in such a way that recognizing a declaratory judgment remedy would upset the overall statutory? Isn't your position contrary to Supreme Court authority that says that the declaratory judgment act can't be an independent source of federal jurisdiction? I mean, it seems like by conceding that the federal declaratory judgment act is your best source for private right of action, you're effectively conceding that you don't have an independent source to sue. But that act can't create one. Sure. You're understood. And I want to distinguish that. That's a very good point. And I think it's very important to distinguish precisely what the issue is here. We all know the rule that a federal declaratory judgment action cannot create subject matter jurisdiction unless it's the mirror image principle, right? And that was discussed in the Transamerica Occidental Life Insurance Company. But here the issue isn't federal jurisdiction, right? There's no doubt that there's federal jurisdiction on the basis of diversity because, you know, all of the plaintiffs and class members are in Nevada. Both of the defendants are California, Delaware. Okay. Let me be more precise. I'm sorry. You can't use the declaratory judgment act to create a private right of action where none exists. That's really the point. I don't know that I necessarily agree with that in this sense, that I think the declaratory judgment act, both federal and Nevada, expressly states that a claim under that act can be brought whether or not further relief is or could be sought. So the way I would put it... Yes, but it's like a remedy. Like, I mean, usually you have a claim or a cause of action and maybe you ask for damages or maybe you ask for an injunction or maybe you ask for a declaratory relief, but they all start from a claim. And if you don't have a claim, I don't see how you get the declaratory relief. In my mind, you know, the way I square that circle, though, is I distinguish between, you know, the right and the remedy. And I think it's fairly clear under the Nevada video service law that a municipality or that is a city or county in Nevada has a right to payment of a franchise fee from those entities that are providing certain video services within their jurisdiction. So that is a right. The legislature has specified how a local government can attempt to get fees that it thinks that it's owed and has not gotten. And this is not the way that it's given. It's given an opportunity to go to the attorney general's office and not an opportunity to go to court. So there may be a right, but there's not a right of action. And that's my problem. Has the city of Reno filed a written complaint with the Consumer Protection Bureau? It has not. And it has not sought any, you know, relief from the attorney general's office. Why not? That's the relief the statute provides, right? I would disagree with that. And so let me move on to the two parts of the Nevada video service law that was cited by— Wait a minute. I need to understand what you're saying. Do you disagree that that is an option, or do you disagree that that is the only option? So obviously, by the plain language of the statute, it is an option. Okay. And so the issue is whether, though, as I think the district court— There is meant to be an exclusive method for your situation. Sure. And so let me address that. That naturally leads—you know, I was intending to leave some rebuttal time, but this is the question, because this is very important. So there are two provisions in the Nevada video service law that the district court cited as the reason why the city of Reno doesn't have a private right of action. So first, there is the attorney general route, and that's NRS Section 711.680, and if you look at that entire statute, right, it doesn't just say that the attorney general on behalf of the cities and counties can try to collect this money. There's a fairly reticulated and detailed two-step audit process. That audit process leads to what is referred to in the statute as— Let me ask a question. Could the Nevada attorney general sue Hulu and Netflix to compel them to get one of these certificates and to pay franchise fees? You know, that's a great question to ask Hulu and Netflix, and the reason why I put it that way is I feel like whatever way you try to get a resolution of this issue, they would say this is the wrong way. But specifically dealing with the attorney general, no, I mean, because the argument would be that that specific provision says that what the attorney general can do is to sue for a disputed underpayment. Disputed underpayment is very specifically referring to the earlier parts of the statute that provides this two-part audit procedure involving local government. Do you think zero is an underpayment when you owe something? Would the IRS tell you that you've underpaid your taxes if you didn't send any money in? No. I mean, I think that there's a distinction. You don't think that's an underpayment? Well— I'll try that next year. Well, let me put it this way. I think that we shouldn't focus—I mean, I think there's this really kind of semantic issue that the district court, you know, indulged in to some extent, is a complete nonpayment and underpayment, and that's an interesting semantic issue. But that's not really the point here, because the point is that it's not in just any underpayment. It's a disputed underpayment. And if you look at the entire statute, disputed underpayment has a specific meaning, which is the result of a two-part audit process. Yeah, but why can't you have an audit, and in the audit you would say you owe these fees for all these years, and they would say we owe nothing, and that's a dispute? We dispute it. Well, because if we try to initiate the audit process, they would say we're not subject to this law. You have no authority to get any information from us or undertake any kind of audit process. But you could try. Have you tried? We have not tried. No, I'll admit that. But if you sued them yourself, you'd probably get the same response from the defendants, right? Sure. But at least, you know, we have our day in court, win or lose, the issue will be decided, whereas if you go through this audit process first, if they say, you know, we don't think we're required to comply with your request for information to determine what the amount of the franchise fees is, what's the next step then? Then you end up in court anyway. I don't know, you know, is there any difference because you took that additional step before you did that? Could I just also ask you about this in 711.680? It begins by saying there's a review and audit to identify an underpayment. It doesn't say disputed at that point. And Section 3, you know, has the audit that will result in, quote, the amount of any underpayment. And then it's only providing a process when there's a disputed underpayment. So it seems to provide that any underpayment counts and there are certain procedures to follow if whatever that is is disputed. So I don't understand how you can read that to exclude zero as an underpayment. Yeah, as I said, the issue isn't whether zero is an underpayment, but what steps need to be taken as a prerequisite to a lawsuit by the Attorney General. I think we have cited and provided some briefs in a case involving another state where, you know, my perception is that Netflix and Hulu are making the exact argument I said would be the one that would prevent the Attorney General route from ultimately being effective. Now, I did briefly, with the minute and eight seconds I have left, want to talk about the Consumer Advocate route, which is NRS 711.850. As we've pointed out, the key language there is both parts of, you know, the operative parts of that statute use the word may. So as I've admitted before, it is certainly an option. It's an option for us. It's an option for the video service providers. Now, the reason that I emphasize in my briefing so much that it has to be reciprocal is if you think about the way this would play out, if instead of being permissive, this is the only avenue for relief, in that case, then you would say that other than a few, you know, specific scenarios laid out in the statute, that the video service providers, too, could not sue directly, and they would have to essentially petition the Office of the Consumer Advocate to make a discretionary decision to pursue a lawsuit. They would not be happy with that interpretation in the same way that it's sued. I have a question following up on something you said earlier that I just want to make sure I understand. So you earlier were talking about the Nevada Declaratory Judgment Act as well as the Federal Declaratory Judgment Act, but as I read your complaint, count two is only the Federal Declaratory Judgment Act. That's completely correct, Your Honor. The reason I was referencing the Nevada Declaratory Judgment Act was specifically looking at the second part of the Baldinado holding, which was interpreting the Nevada Declaratory Judgment Act, but substantively, I don't know in terms of the basic ground rules that, you know, you cannot have a claim for declaratory relief where it would interfere with, you know, the legislative scheme in terms of remedies. I don't know that that's any different between Nevada law and federal law as far as I know that there's both ways. So you're not asking us for leave to amend to add Nevada declaratory judgment. You're not asking us to do a separate analysis under Nevada declaratory judgment. We can just look at the federal rules and figure out the answer. To my understanding, yes, that's correct. I have no reason to believe that the answer would be different under either regime. So I have taken up my time, and so I obviously will not have any rebuttal, but if the court wants me to address anything, I'm certainly happy to do so. Thank you very much. Let's hear from your opposing counsel. Good morning, your honors, and may it please the court. Excuse me. I think we were going to have separate time on the clock. No? That's today. Oh, on this case, it looks like we also did. On our sheet, it shows 8 and 7. You looked at 8. May it please the court. Oh. But you are dividing time? Or sorry. That's correct, your honors. So I'll present for 8 minutes on behalf of Netflix, and then Mr. G will present for 7 minutes on behalf of Hulu, if that's okay with the court. That's fine. If you go over your time, you'll be stealing his time, but go ahead. We can also, if it's easier, put 8 minutes on the clock and 7 minutes on the clock. That's probably easier just to help keep track. Thank you. Your honors, like 7 other courts across the country, the district court here granted Netflix's and Hulu's motions to dismiss on two principal grounds, lack of a private right of action and the public internet exception, and we respectfully submit that this court should affirm both of those findings. If we conclude that there's no private right of action, why would we go further? Because there would be no proper lawsuit in front of us. We certainly agree with your honor that if the court were to agree with the district court's finding that there's no private right of action, that is a complete and independent basis to affirm the lower court's decision. We address both issues in our briefing because the district court addressed both and they're independent grounds for dismissal. I'm going to take up Mr. Kim's suggestion and ask you whether under the Nevada statute had they gone to the Attorney General's office with a written complaint, would the Attorney General be empowered to bring a declaratory judgment action? The Attorney General has authority, or really the Consumer Advocates Bureau under Section 711850 has the authority in response to a complaint to bring an action against a video service provider to enforce provisions of the chapter, as well as to seek equitable and declaratory relief. So the answer to my question is yes, there would be authority, and then you would be off to the races on your substantive argument that the statute doesn't apply to you? I think that's correct, Your Honor. I think that the Consumer Advocate in the Attorney General's office can decide whether there's a valid complaint that a company like Netflix and Hulu that has no physical presence in the right-of-way to begin with, whether they should be required to seek a certificate. But if they thought so, they could bring the action and then you'd argue it in court? I think that they could bring the action pursuant to the terms of Section 815. Okay. And, Your Honor, to put the framework here, both the lower court's findings are consistent with the entire structure and purpose of this Act because the purpose of the Nevada law was to limit the authority of local governments, to centralize franchising authority and enforcement at the state level. Can I interrupt you a minute? You said because you don't have any physical presence, you would be not required to get a certificate and pay franchise fees. But the plaintiffs do point to a number of statutory sections that don't make it a requirement that you have a physical presence. So I'm looking at 711, 470, 670, and 151. So, Your Honor, the plaintiffs do point in particular to the phrase, through the wireline facilities. But it's important to understand both the context and the entire structure of the Act, as well as how all of the provisions link together. So the statute incorporates the definition of a franchise directly from federal law, and that is the ability or the right to construct or operate in the physical public land. And a franchise regime, which does come... But in a number of statutes, they say or. Provide video services or do this construction, installation, repair. Understood, Your Honor. So that doesn't change that there's a physical requirement, and here's why. The first answer to that is that there were incumbent or video service providers pre-centralizing this regime at the statewide level. And part of this was that those entities that already had their networks in the rights-of-way, already had their wireline facilities, could then continue to operate under a statewide franchise and continue to pay the rent for the ability to do so, to have those wires in the rights-of-way. The second is that what is the definition of video service, to provide video service, and to be a video service provider? It's to provide video service over a video service network. And a video service network is having wireline facilities in the land. And so it does always link back to the land. If you didn't read the statute that way, it not only would contradict the fundamental purpose and bargain about what a franchise is, but it would also require rewriting several provisions of the statute that link to the construction and authorization, as well as to providing channels of content or public educational and governmental content over a wireline network in the rights-of-way. So it's an argument that the city makes that doesn't really hold up when you apply it to the entire framework of the statute. Your Honors, it was interesting to hear the City of Reno argue that the Declaratory Judgment Act was the best source of authority for a private right of action because, number one, they didn't actually assert that in the lower court below, that that created an independent cause of action if the statute didn't. But I think, as the court has already alluded to today, the Declaratory Judgment Act does not create a substantive, separate private right of action. It is a procedural mechanism that may add a remedy, but it doesn't create that additional cause of action. And here, especially when you look at the statewide administrative regime that exists, a cause of action doesn't exist. The Baldinado decision tells us that. We all agree that there's no express right of action, and there's no basis to imply one. The city was not the special beneficiary of this regime. It was the telecommunication companies seeking reduced barriers to entry, and it was consumers who would have greater choice and lower costs in their ability to get cable television. And so there's no reason. Really, the purpose of the act was to take power away from the cities, to centralize it at the statewide level, and to limit the city's authorities. Implying a right of action here would essentially re-empower the various cities that the legislature sought to disempower. And the Nevada legislature's decisions on how to enforce and effectuate its statute should be given effect. If the city of Reno has a dispute about that, that dispute belongs with the Nevada legislature. It does not belong before the courts. And to expand the Declaratory Judgment Act beyond that would essentially allow a private right of action that doesn't exist in state courts. And it would conflict with circuit court precedent, both at the District of Columbia Circuit, the Fifth Circuit, the Sixth Circuit, and it would expand the federal law far beyond it's ever been done before. Your Honor, to use my last minute, and I realize if there's no private right of action, that might be the end of the discussion, but the content is also delivered over the public Internet. That exception is focused on the content itself. Netflix's content is undisputedly delivered over the Internet. The only way to access it is by getting a subscription to Netflix's online streaming service, and that is the public Internet. It's the Internet that we all use to access everything else online, from our Google searches, to our social media, to our news, to even the Zoom link that people may be watching these court proceedings on today. So plaintiffs plug that in their complaint, that Netflix customers use a broadband Internet connection, and that Internet service providers connect the subscribers to Netflix's content. It's therefore undisputed that Netflix's content is being delivered over the public Internet. And even accepting the city's argument that the service in the public Internet refers only to the ISP, it still applies because Netflix's content is delivered over the public Internet by the Internet service providers. There's no further questions. Thank you very much. Thank you. Thank you. Thank you. Thank you. Victor G. on behalf of defendant and appellee Hulu. I'm not going to repeat a lot of the arguments that have already been done. I just want to make two points. The first one is on the private right of action question. This is a situation where allowing any kind of declaratory relief claim does interfere with the system or the situation that the Nevada legislature has created. This is a situation where the Attorney General, the state actors that are given franchise authority in Nevada, have never applied the statute to online Internet streaming. Hulu and Netflix both existed around the same time as the statute was enacted. You can see that the Nevada Attorney General could sue Netflix and Hulu to compel all to get a certificate of authority and pay franchise fees. They can certainly bring the claim and run right smack down into the problem substantively, but absolutely procedurally. I think the statute is very clear that the Attorney General has wide discretion to enforce. Wait, so you would fight that as well? So you would say there's no remedy at all? No. No one can ever sue you that you should be a certificate holder and that you should pay franchise fees? That is not what I said. What I meant is they absolutely can bring the claim. He wins on the merits. That's what you're saying. Correct. They can sue you, but they'll lose. Correct. So I think the reason you see is a difference of opinion between the city of Reno and, frankly, every other state actor in Nevada so far, because they're the only ones who have sought to apply the statute in this way. And in a franchising context, the statute was intended to get one authority, one voice, and so it does create that interference that Baldonado was talking about. But on the merits, I just want to briefly address Your Honor's question about physical presence being needed and whether or not you have to construct or operate and the many references that use the word or. The statute does include the reference to or in certain instances and in others, but construct and operate there absolutely is a physical requirement in the statute. It comes from the definition of video service provider, which is defined as video service through a video service network, and that key definition of video service network. The video service network, so this is what distinguishes over-the-air broadcasting or something else. It has to be video service through a video service network, and that's defined as a facility that is used to provide video service. Any facility that's not used to provide video service is excluded from that definition of video service network. Now, why is that important? That's why the district court got it exactly right, because video service excludes, it has that public internet exclusion. The entire debate on the appeal from the city of Reno is their argument that that language is narrowed and limited down to ISPs. But that doesn't win them the case, because if it's narrowed down to ISPs and they think that that's enough, that any use of them, the problem is their entire case depends on our use, theoretically, of accessing services through the ISP networks. And if the ISP networks are sufficient to trigger the franchise requirement, their problem is it also triggers the exclusion. Video service specifically excludes any video content that's provided solely as part of someone accessing the internet over the public internet. The way that provision works is, it says, if the reason it's going through the pipes is because you're having to surf online and you're going online to access that content, that's excluded from the definition of video service. So that means their concession in the appeal brief where they say their satisfying of the video service network relies on the high-speed wireline internet facilities of local ISPs. If that's what they think satisfies video service network, they lose, because video service network excludes the use of the ISP facilities. That's the entire point of the district court's ruling, because it excludes that access. The reason for that is online streaming is just different. Nevada was not trying to regulate online streaming. They knew they would have running problems with IFA, and the whole point was just to get out of that. They were trying to get cable companies. They were trying to get people with private networks, not the public internet. And that's where the exclusion comes in. They lose by the concession that the only network they have is the ISP network, and that cannot count for video service or video service network under the statute. If there are no other questions, that's all I have. Thank you. Thank you both sides for the helpful arguments. This case is submitted.
judges: GRABER, FRIEDLAND, KOH